

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISKA BLODGETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 6836 |
| v. ) | |
| ) | Paul E. Plunkett, Senior Judge |
| WACHOVIA NATIONAL BANK, N.A., ) | |
| INTERBAY FUNDING, LLC and ) | |
| BAYVIEW FINANCIAL, L.P. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Liska Blodgett ("Plaintiff") filed a seven-count complaint for relief under 18 U.S.C. § 1961 et seq. and additional relief against Wachovia National Bank, Interbay Funding and Bayview Financial ("Defendants"), claiming that Defendants violated RICO; provided fraudulent information to credit bureaus; fraudulently induced Plaintiff to enter into a contract and other agreements; breached their contract; tortiously interfered with Plaintiff's business relations; and slandered Plaintiff. The parties have established diversity jurisdiction and before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendants contend that Plaintiff's complaint is barred by *res judicata*, collateral estoppel and the Colorado River doctrines. For the reasons set forth below, Defendants' motion is granted.

## Background

We take, as we must, the following facts as true. Liska Blodgett and her husband were the sole owners of Riverfront Work Lofts, Inc. ("Riverfront" or "Property"). First Union is a holder by assignment of a promissory note, mortgage and security agreement, and an assignment of leases and rents executed by Riverfront. Wachovia is the successor in interest to First Union; Interbay is the servicing agent for Wachovia; and Bayview is the parent company of Interbay.

After Plaintiff obtained a loan in early 2000, the Property was damaged by lightening and Plaintiff failed to make the July 2000's mortgage payments. Not surprisingly, Defendants notified Plaintiff that she was in default and accelerated her payment schedule, requiring immediate, full payment of past and present mortgage fees ($3,866,234.96) at an increased default rate. After receiving no payment, Defendants proceeded with foreclosure on the property.

In November 2000, Riverfront filed for bankruptcy and during that procedure, Plaintiff and Defendants reached an agreement under which Defendants agreed to assist Plaintiff in repairing the lightening damage and more importantly agreed not to seek to foreclose upon the property provided Plaintiff stayed within a budget for property expenses and Defendants would manage the property. (Pl.'s Comp. ¶ 22.) Though Blodgett requested a cap be instated for the repairs, Defendants would not agree to those terms. (Id. 24.) Plaintiff felt that she had no option but to agree to Defendants' terms; she claims that the Property was mismanaged because the Defendants' service and repair fees were too high and their agent did not properly collect monies from the tenants. (Id. 25.)

Plaintiff could not maintain the budget and in January 2001, Defendants sought to terminate the agreement. However, in May 2001, Plaintiff and Defendants reached another agreement in which Plaintiff consented not to litigate Defendants' agent's conduct and Defendant would allow Plaintiff to manage her own Property. Still in July 2001, Blodgett breached the budget agreement

and Defendants again began foreclosure proceedings on the Property. (Pl.'s Comp. ¶¶ 29, 30.) In September 2001, Defendants installed a new receiver, Jack Shapiro, and Blodgett claims that Shapiro also mismanaged the Property and impeded her ability to meet her budget and to receive financing. (*Id.* 31.) In February 2002, the court determined that Shapiro had acted improperly. (*Id.* 33, 35.) Then, in November 2002, Judge Thomas Quinn permitted foreclosure to proceed giving any lien holder the right to redeem the Property.

Plaintiff claims that Defendants interfered with her efforts to reclaim the Property. Specifically, she states her attorney failed to help her because he was enticed by Defendants to accept money in exchange for not opposing Defendants' foreclosure actions. (*Id.* 39.) On January 6, 2003, Blodgett claims she was induced to enter into a purchase and sale agreement ("Agreement") in which she agreed to waive, dismiss, withdraw and release various claims against Defendants. In return, Plaintiff would be permitted to repurchase and refinance the Property by March 14, 2003. In addition to the release and discharge of all past and future claims against Defendants, the Agreement also contained a failure to close/default provision whereby Plaintiff agreed not to "prevent, stop, block, delay or otherwise interfere with the conveyance of the Property." However, from January 6 to March 17, 2003 Blodgett claims she was the one who was prevented from performing her obligations under the terms of the Agreement because of willful and malicious acts by Defendant. (*Id.* 45.) Specifically, Defendants did not provide Plaintiff with financial information necessary to obtain financing; did not allow her to show prospective tenants the building; neglected the maintenance of the Property; allowed tenants to break leases thereby diminishing the value of the leases; kept cash payments from tenants; and did not provide Plaintiff with the property information package as provided in the Agreement. (*Id.* 45). Furthermore, Plaintiff avers that

3

Defendants also acted willfully and maliciously by slandering Blodgett to prospective lenders. (*Id.* 48.)

On March 14, 2003, all parties met, but Blodgett was without the proper funds and financing to close. Upon her request for more time, Plaintiff and Defendants signed a letter agreement that extended the closing date until March 17, 2003 at 5:00p.m. However, Blodgett asserts that Vice President of Interbay, Lapointe, orally provided Blodgett thirty additional days to close on the loan commitment, provided Lapointe had personally spoken to the prospective lender. Blodgett claims that thereafter Lapointe made himself unavailable to speak to her lender. On March 17, 2003, when Blodgett and her representatives failed to appear for the new closing date, per the letter agreement, Defendants proceeded with foreclosure and the Property was sold to another buyer on March 21, 2003.

Plaintiff then filed a mechanic's lien against the Property and a chancery complaint seeking a declaration that Defendants breached their duties under the purchase and sale agreement resulting from their alleged interference with and impeding of Plaintiff from performing her obligations under the Agreement. Judge Quinn ultimately granted Defendants' motion to dismiss the complaint and that dismissal was upheld by the Illinois Appellate Court. Later, on March 11, 2005, in another complaint containing similar claims to those presented in chancery court, Judge Lee Preston granted Defendants' motion to dismiss finding that all claims were barred by the doctrine of *res judicata*. (Mem. Op. & Order at 3.) On February 9, 2005, Plaintiff filed this seven-count complaint claiming that Defendants violated RICO; provided fraudulent information to credit bureaus, fraudulently induced Plaintiff to enter into a contract and other agreements; breached their contract; tortiously interfered with Plaintiff's business relations; and slandered Plaintiff.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

In its motion to dismiss, Defendants claim that all counts must be dismissed pursuant to the doctrine of *res judicata* or collateral estoppel. Defendant also moves to dismiss under *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). Defendants argue that, because Plaintiff has litigated her claims and received final judgment, *res judicata* bars her from bringing her claims here. We agree. In examining the *res judicata* issue, we apply Illinois law to determine whether the doctrine precludes Blodgett's claims in federal court. *4901 v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000). This Court is required to give to an Illinois judgment the same preclusive effect that it would be given by an Illinois court. *See* 28 U.S.C. § 1738. In Illinois, *res judicata* bars litigation of a later claim if there is: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of parties; and (3) an identity of causes of action. *People v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294, 602 N.E.2d 820, 825 (1992). In addition, *res judicata* bars re-litigation of all matters that *could* have been raised in the first suit. *Housing Auth. for LaSalle County v. YMCA of Ottawa*, 101 Ill. 2d 246, 251-52, 461 N.E.2d 959, 962 (1984) (emphasis added). The burden is on the party asserting preclusion to show "the issue was or could have been determined by the prior judgment." *Jones v. Alton*, 757 F.2d 878, 886 (7th Cir. 1985.)

As to the first element, according to Judge Quinn's order dated October 22, 2003, Defendants' motion to dismiss was granted. In that order, Judge Quinn stated that Plaintiff's allegations that Defendants prevented her from performing her obligations under the contract failed to state a viable claim. In December 2004, the Illinois Appellate Court affirmed Judge Quinn's dismissal stating that Defendants did not breach the Agreement, nor did they prevent Plaintiff from performing under the contract. In March 2005, in another of her complaints, Plaintiff realleged several of the same facts that were previously presented to the chancery court. Judge Preston of the law division found that Plaintiff's claims were barred by the doctrine of *res judicata*. These two orders constitute final judgments and therefore the first element is satisfied.

Second, the parties are identical. Liska Blodgett is Plaintiff in all three cases and Wachovia is a named Defendant in the chancery court case, the law division case and the instant case, while Interbay and Bayview are named Defendants in the chancery court case and the case at hand. Therefore, the second element has also been met.

That brings us to the third and final element of *res judicata*: identity of causes of action. Illinois courts have adopted two tests for determining whether this element is met: the same evidence test and the transactional test. *Rodgers v. St. Mary's Hosp.*, 149 Ill. 2d 302, 312, 597 N.E.2d 616, 621 (1992); *see also, Zabel v. Cohn*, 283 Ill. App. 3d 1043, 1050, 670 N.E.2d 877, 882 (1st Dist. 1996). The same evidence test "bars a second suit if the evidence needed to sustain [it] would have sustained the first [suit], or if the same facts were essential to maintain both actions." *Rodgers*, 149 Ill. 2d at 312, 597 N.E.2d at 621. The transactional test "considers whether both suits arise from the same transaction, incident or factual situation." *Id.* If they do and each suit arises from "a single group of operative facts," they are identical and the second action is barred. *Id.*; *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334-35 (7th Cir. 1992); *Roboserve Inc. v. Kato*

*Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997) (internal quotation marks and citation omitted). The transactional approach also provides that asking for recovery under different theories would still amount to one cause of action under *res judicata* "if a single group of operative facts gives rise to the assertion of relief." *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 391-92 (2001). Furthermore, *res judicata* precludes subsequent lawsuits on matters that were already decided as well as those that could have been decided based on the commonality of facts. *Rein v. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996).

In her chancery court case, Plaintiff alleged that during the period outlined in the Agreement, Defendants willfully and maliciously interfered with and impeded Plaintiff from performing her obligations under the Agreement. Specifically, Blodgett alleged that Defendants made false and disparaging remarks about her to potential lenders; refused to provide her with financial information that would help her obtain financing; denied her access to the Property to show it to prospective lenders; withheld leasing information from her; diminished the income of property by allowing tenants to break their leases; and neglectfully and intentionally ignored the maintenance and repair of the Property. Defendants argued there that according to the terms agreed upon in the Agreement and the letter agreement, Blodgett was precluded from taking any action regarding the Property and therefore her complaint was not viable. The chancery court agreed and granted Defendants' motion. The Illinois Appellate Court affirmed.

Similarly, in the law division complaint, Plaintiff presented the identical arguments decided by the chancery court and also added that Plaintiff was induced to enter in agreements with Defendants. On March 11, 2005, the law division court determined that all of Plaintiff's claims were barred by the doctrine of *res judicata*. Now, Plaintiff again presents the same set of operative facts which formed the basis for her chancery and law division complaints. Here, Plaintiff alleges

7

Defendants: (1) submitted false credit information in violation of RICO; (2) provided derogatory credit information about Plaintiff to credit bureaus; (3) fraudulently induced Plaintiff to enter into the settlement agreement and the purchase and sale agreement; (4) fraudulently induced Plaintiff to sign the letter agreement on March 14, 2003; (5) breached the contract; (6) tortiously interfered with Plaintiff's business relations by not providing financial information; and (7) slandered and libeled Plaintiff by making disparaging remarks to potential lenders. The claims here would not only be supported by the same evidence as the claims in the previous actions, but they also relate to the same property, the same circumstances, the same parties, and the same alleged infractions. Plaintiff was required to assert all of her related claims in the previous actions but failed to do so. Even Count I, which was not specifically set forth in the prior cases, is simply another theory of recovery that stems from same facts as the other counts. Though Plaintiff offers several theories of relief surrounding this same set of facts, the events all derive from a "single core of operative facts" that could have been raised previously, but were not, and are now barred under the doctrine of *res judicata*. *Prochotsky*, 966 F.2d at 334-35. Therefore, the doctrine of *res judicata* properly precludes Plaintiff's complaint here. Thus, the last element, identity of causes of action, is met and Defendant's motion to dismiss is granted.

Because we believe the doctrine of *res judicata* bars Plaintiff from litigating her claims once again in this Court, we need not address Defendants' alternative arguments of collateral estoppel and *Colorado River* doctrines. A federal district court is not a forum in which a plaintiff can re-litigate issues that were raised or should have been raised in state court lawsuits.

## Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss. This is a final and appealable order.

**ENTERED:**

_____
HON. PAUL E. PLUNKETT
United States District Judge

DATED: JAN 1 3 2006